UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TYLER SALTZMAN, individually and on behalf of all others similarly situated | § § § | Docket No. _____ |
| Plaintiff, | § § | |
| v. | § § | JURY TRIAL DEMANDED |
| SHELL OIL COMPANY | § § | FLSA COLLECTIVE ACTION |
| Defendant. | § § | |

**ORIGINAL COMPLAINT**

1. Tyler Saltzman (Saltzman or Plaintiff) brings this lawsuit to recover unpaid overtime wages and other damages from Shell Oil Company (Shell or Defendant) under the Fair Labor Standards Act (FLSA). *See* 29 U.S.C. § 201 *et seq*.

2. During the relevant time period, Shell utilized the services of Logistics Coordinators and Wellsite Operators like Saltzman to work on its behalf.

3. Many of the Logistics Coordinators and Wellsite Operators Shell employed, including Saltzman, were staffed to Shell by third-party entities.

4. Saltzman, and the other Logistics Coordinators and Wellsite Operators like him who worked for, or on behalf of Shell, regularly worked more than 40 hours a week.

5. But Saltzman and the other Logistics Coordinators and Wellsite Operators like him were not paid overtime.

6. Instead of paying overtime as required by the FLSA, Shell improperly classified these workers as independent contractors and paid them a daily rate with no overtime compensation in violation of the FLSA.

7. Saltzman brings this collective action to recover the unpaid overtime wages and other damages owed to him and other Logistics Coordinators and Wellsite Operators like him.

## II. JURISDICTION AND VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

10. Shell conducts substantial business operations in this District and Division.

11. Shell maintains its corporate headquarters in this District and Division.

## III. THE PARTIES

12. From approximately August 2017 until January 2018, Saltzman worked for Shell as a Logistics Coordinator and Wellsite Operator.

13. Throughout his employment, Shell paid Saltzman a day-rate with no overtime compensation and classified him as an independent contractor.

14. Saltzman's consent to be a party plaintiff is attached as Exhibit A.

15. Saltzman brings this action on behalf of himself and all other similarly situated Logistics Coordinators and Wellsite Operators who worked for, or on behalf of Shell, who were classified as independent contractors and paid a day-rate with no overtime compensation.

16. Saltzman and the Logistics Coordinators and Wellsite Operators like him were paid a flat amount for each day worked and did not receive overtime for all hours that they worked over 40 hours in a workweek in accordance with the FLSA.

17. The class of similarly situated employees or potential class members sought to be certified is defined as follows:

> **All Logistics Coordinators or Wellsite Operators who worked for, or on behalf of Shell, who were classified as independent contractors, and who were paid a day-rate during the last 3 years.**

18. **Shell Oil Company** is a Delaware corporation and may be served by serving its registered agent for service of process, C T Corporation System, at 1999 Bryan Street, Suite 900,

Dallas, Texas 75201, or wherever it may be found.

## IV.   COVERAGE UNDER THE FLSA

19. At all times hereinafter mentioned, Defendant has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

20. At all times hereinafter mentioned, Defendant has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

21. At all times hereinafter mentioned, Defendant has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

22. Defendant has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or were produced for commerce, such as oilfield equipment, hand tools, computers, automobiles, and cell phones.

23. Defendant's annual gross volume of sales has exceeded $500,000 in each of the past 3 years.

24. At all relevant times hereinafter mentioned, Saltzman and the other Logistics Coordinators and Wellsite Operators like him were engaged in commerce or in the production of goods for commerce.

25. At all relevant times hereinafter mentioned, Shell treated Saltzman (and indeed each of the Logistics Coordinators and Wellsite Operators like him) as an employee and uniformly applied the day-rate pay practice to Saltzman and the Logistics Coordinators and Wellsite Operators like him.

26. The misclassification of Saltzman and the other Logistics Coordinators and Wellsite Operators like him as independent contractors does not alter their status as employees for purposes of this FLSA collective action.

## V.   FACTS

27. Shell is one of the largest oil and gas companies in the world and operates throughout the United States.

28. To provide services to many of its customers, Shell retains workers (including Logistics Coordinators and Wellsite Operators) to perform services on its behalf.

29. During the relevant period, Shell contracted with third-party entities to provide it with oilfield personnel to work for it or on its behalf, including Logistics Coordinators and Wellsite Operators like Saltzman.

30. Shell and the third-party entities who staffed oilfield personnel to Shell to work for or on its behalf jointly determine and share control over the terms and conditions of employment.

31. Shell and the third-party entities who staffed oilfield personnel to Shell to work for or on its behalf jointly hired and fired, supervised and controlled, set pay, determined hours, and approved time sheets with respect to these workers.

32. Shell is a joint employer of the oilfield personnel staffed to it by the third-party entities.

33. Many of the Logistics Coordinators and Wellsite Operators staffed to Shell, including Saltzman, were paid on a day-rate basis, misclassified as independent contractors, and make up the proposed Putative Class.

34. Even if their job titles and precise job duties differed, Shell subjected Saltzman and the other Logistics Coordinators and Wellsite Operators like him to the same or similar illegal pay practices for similar work.

35. Specifically, Shell classified all the Logistics Coordinators and Wellsite Operators as independent contractors and paid them a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek).

36. Shell uniformly failed to pay overtime for the overtime hours Saltzman and the other

Logistics Coordinators and Wellsite Operators like him worked.

37. For example, from approximately August 2017 until January 2018, Saltzman worked for Shell as both a Logistics Coordinator and a Wellsite Operator.

38. Throughout his employment, Shell classified Saltzman as an independent contractor and paid him on a day-rate basis.

39. Shell directed Saltzman to work 12 (or more) hours a day for as many as 7 days in a week.

40. Saltzman worked well in excess of 40 hours each week while employed by Shell, often for weeks at time.

41. The work Saltzman performed was an essential part of Shell's core business.

42. During Saltzman's employment with Shell and while he was classified as an independent contractor, Shell exercised control over all aspects of his job.

43. Shell did not require any substantial investment by Saltzman for him to perform the work required of him.

44. Shell controlled Saltzman's opportunity for profit and loss by dictating the days and hours he worked and the rate he was paid.

45. Saltzman was not required to possess any unique or specialized skillset (other than that maintained by all other workers in his respective position) to perform his job duties.

46. Saltzman worked exclusively for Shell as an independent contractor from approximately August 2017 until January 2018.

47. While working for Shell, Shell controlled all the significant or meaningful aspects of the job duties performed by Saltzman.

48. Shell exercised control over the hours and locations Saltzman worked, tools and equipment used, and rates of pay received.

49. Even though Saltzman often worked away from Shell's offices without the presence of a direct supervisor employed by Shell, Shell still controlled significant aspects of Saltzman's job activities by enforcing mandatory compliance with its policies and procedures.

50. No real investment was required of Saltzman to perform his job.

51. More often than not, Saltzman utilized equipment provided by Shell to perform his job duties.

52. Saltzman did not provide the significant equipment he worked with on a daily basis. Shell made the large capital investments in buildings, machines, equipment, tools, and supplied in the business in which Saltzman worked.

53. For instance, Shell provided Saltzman with a laptop and a company-issued email address.

54. Saltzman did not incur operating expenses like rent, payroll, marketing, and insurance.

55. Saltzman was economically dependent on Shell during his employment with Shell.

56. Shell set Saltzman's rates of pay, his work schedule, and effectively prevented (or outright prohibited) him from working other jobs for other companies while he was working on jobs for Shell.

57. Shell directly determined Saltzman's opportunity for profit and loss.

58. Saltzman's earning opportunity was based on the number of days Shell scheduled him to work.

59. Very little skill, training, or initiative was required of Saltzman to perform his job duties.

60. Indeed, the daily and weekly activities of the Logistics Coordinators and Wellsite Operators were routine and largely governed by standardized plans, procedures, and checklists created by Shell.

61. Virtually every job function was pre-determined by Shell, including the tools and equipment to use at a job site, the data to compile, the schedule of work, and related work duties.

62. The Logistics Coordinators and Wellsite Operators were prohibited from varying their job duties outside of the pre-determined parameters and were required to follow Shell's policies, procedures, and directives.

63. Saltzman performed routine job duties that were largely dictated by Shell.

64. Saltzman worked exclusively for Shell from approximately August 2017 until January 2018.

65. Saltzman was not employed by Shell on a project-by-project basis.

66. In fact, while Saltzman was classified as an independent contractor, he was regularly on call for Shell and was expected to drop everything and work whenever needed.

67. All of the Logistics Coordinators and Wellsite Operators working for, or on behalf of Shell, perform similar job duties and are subjected to the same or similar policies and procedures, which dictate the day-to-day activities performed by each person, regardless of the third-party entity they were staffed through.

68. All of the Logistics Coordinators and Wellsite Operators working for, or on behalf of Shell, also worked similar hours and were denied overtime as a result of the same illegal pay practice, regardless of the third-party entity they were staffed through.

69. All of the Logistics Coordinators and Wellsite Operators working for, or on behalf of Shell, all worked in excess of 40 hours each week and were often scheduled to work 12 hour shifts for weeks at a time, regardless of the third-party entity they were staffed through.

70. Instead of paying them overtime, Shell paid Saltzman and the other Logistics Coordinators and Wellsite Operators like him a day-rate and misclassified them as independent contractors.

7

71. Shell denied Saltzman and the other Logistics Coordinators and Wellsite Operators like him overtime for hours worked in excess of 40 hours in a single workweek.

72. Saltzman and the other Logistics Coordinators and Wellsite Operators like him were never paid on a salary basis. They never received any guaranteed weekly compensation from Shell irrespective of days worked (i.e., the only compensation they received was the day-rate they were assigned for all hours worked in a single day or week).

73. Shell's policy of classifying Saltzman and the other Logistics Coordinators and Wellsite Operators like him as independent contractors and failing to pay them overtime, violates the FLSA because these workers are, for all purposes, non-exempt workers.

74. It is undisputed that the Logistics Coordinators and Wellsite Operators are working long hours in the oilfield.

75. Because Saltzman and the other Logistics Coordinators and Wellsite Operators like him were misclassified as independent contractors by Shell, they should receive overtime for all hours worked in excess of 40 hours in each workweek.

76. Shell's day-rate system violates the FLSA because Saltzman and the other Logistics Coordinators and Wellsite Operators like him did not receive any overtime pay for hours worked over 40 hours each week.

## VI.  FLSA VIOLATIONS

77. As set forth herein, Defendant has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees for workweeks longer than 40 hours without paying them overtime.

78. Defendant knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Saltzman and the other Logistics Coordinators and Wellsite Operators like him overtime compensation.

79. Defendant's failure to pay overtime compensation to these workers was neither reasonable, nor was the decision not to pay overtime made in good faith.

80. Accordingly, Saltzman and the other Logistics Coordinators and Wellsite Operators like him are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

### VII. COLLECTIVE ACTION ALLEGATIONS

81. The illegal pay practices Defendant imposed on Saltzman were likewise imposed on the other Logistics Coordinators and Wellsite Operators like him, including those working for, or on behalf of Shell, through third-party entities.

82. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

83. Numerous other individuals who worked with Saltzman as Logistics Coordinators and Wellsite Operators, including those who worked through third-party entities, indicated they too were improperly classified as independent contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

84. Based on his experiences and tenure with Defendant, Saltzman is aware that such illegal practices were imposed on the members of the Putative Class.

85. Saltzman and the other Logistics Coordinators and Wellsite Operators like him were all improperly classified as independent contractors and not afforded the overtime compensation when they worked in excess of forty 40 per week.

86. Shell's failure to pay wages and overtime compensation at the rates required by federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of any of the Logistics Coordinators and Wellsite Operators like Saltzman.

87. Saltzman's experiences are therefore typical of the other Logistics Coordinators and Wellsite Operators who worked for, or on behalf of, Shell.

88. The specific job titles or precise job locations of the various members of the Putative Class do not prevent class or collective treatment.

89. Saltzman has no interests contrary to, or in conflict with, the members of the Putative Class. Like each member of the Putative Class, Saltzman has an interest in obtaining the unpaid overtime wages owed under federal law.

90. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

91. Absent this action, many members of the Putative Class likely will not obtain redress of their injuries and Shell will reap the unjust benefits of violating the FLSA.

92. Furthermore, even if some of the members of the Putative Class could afford individual litigation against Shell, it would be unduly burdensome to the judicial system.

93. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the Putative Class and provide for judicial consistency.

94. Saltzman's claims are similar to the claims of the other Logistics Coordinators and Wellsite Operators who worked for, or on behalf of, Shell who were classified as independent contractors and paid a day-rate with no overtime compensation. Saltzman and the other Logistics Coordinators and Wellsite Operators like him sustained damages arising out of Defendant's illegal and uniform employment policy.

95. Saltzman knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

96. Even if the number of hours worked by the Logistics Coordinators and Wellsite Operators like Saltzman varies, the proof and method for calculating damages is common.

97. Further, there is no detraction from the common nucleus of liability facts.

## VIII. JURY DEMAND

98. Saltzman demands a trial by jury.

## IX. RELIEF SOUGHT

99. WHEREFORE, Saltzman prays for judgment against Defendant as follows:

   a. An order allowing this action to proceed as a collective action under the FLSA and directing notice to all Logistics Coordinators and Wellsite Operators who worked for, or on behalf of, Shell who were classified as independent contractors and paid a day-rate with no overtime compensation in the last three years;

   b. For an Order pursuant to Section 16(b) of the FLSA finding Defendant liable for unpaid back wages due to Saltzman and the Logistics Coordinators and Wellsite Operators like him for liquidated damages equal in amount to their unpaid compensation;

   c. For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

   d. For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael A. Josephson*
**Michael A. Josephson**
Fed. Id. 27157
State Bar No. 24014780
**Lindsay R. Itkin**
Fed. Id. 1458866
State Bar No. 24068647
**JOSEPHSON DUNLAP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
litkin@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Fed. Id. 21615
State Bar No. 24001807
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**